**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BASTIAN SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No.: _____ |
| ATTABOTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Bastian Solutions, LLC ("Bastian"), by its attorneys, Quarles & Brady LLP, for its complaint against Attabotics, Inc. ("Attabotics") alleges as follows:

## I.    JURISDICTION AND VENUE

**A.    The Parties**

1.    Plaintiff, Bastian, is an Indiana limited liability company with its principal place of business located at 10585 N. Meridian St., 3rd Floor, Carmel, Indiana 46290. Bastian's sole member is a citizen of the State of Delaware.

2.    Defendant Attabotics, Inc. is a Canadian corporation with its principal place of business located at 7944 10th Street N.E., Calgary, Alberta, Canada T2E 8W1.

**B.    Jurisdiction and Venue are Appropriate.**

3.    Complete diversity exists among the parties. *See* 28 U.S.C. § 1332.

4.    The amount in controversy at issue in this matter exceeds $75,000, exclusive of interest and costs. *Id.*

5.    This Court has specific personal jurisdiction over Attabotics because Indiana's long-arm statute, Trial Rule 4.4(A)(1), includes persons "doing any business in this state," and the Court's exercise of jurisdiction is consistent with the federal Due Process Clause. *Wine & Canvas*

*Development, LLC v. Weisser*, 886 F.Supp.2d 930, 938 (S.D. Ind. 2012). Attabotics expressly agreed to the Integrator Agreement with Bastian, an Indiana company, and negotiated and executed the Integrator Agreement agreeing to an Indiana choice of law provision.[1]

6. Venue is appropriate in this forum because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, 28 U.S.C. § 1391(b)(2), and because Attabotics is subject to the Court's personal jurisdiction with respect to this action, 28 U.S.C. § 1391(b)(3). Attabotics is a party to the Integrator Agreement, and as such, voluntarily agreed to be subject to the laws of the State of Indiana.

## II. BACKGROUND FACTS

**A. Bastian and Attabotics's Relationship is Governed by the Integrator Agreement.**

7. Bastian and Attabotics entered into a contract entitled the "Integrator Agreement" on June 12, 2020. (Ex. A.)

8. The purpose of the Integrator Agreement was to memorialize how Attabotics would sell its hardware and license its software to Bastian, the "Integrator," for Bastian to then re-sell and distribute to end users. (*See* Ex. A.)

9. Attabotics authorized Bastian to sell its proprietary warehouse management system which is "[i]nspired by ant colonies" and "replaces the rows and aisles of traditional fulfillment centers with a patented storage structure and robotics shuttles that utilize both horizontal and vertical space, reducing a company's warehouse needs by 85%." *About Us*, https://www.attabotics.com/about-us/ (last accessed Jan. 29, 2023).

10. Through the Integrator Agreement, Attabotics appointed Bastian to be an "authorized Reseller and Integrator of the Attabotics Products," and Bastian was appointed and

---

[1] A true and accurate copy of the Integrator Agreement is attached hereto as Exhibit A.

afforded a "non-exclusive right . . . to purchase Hardware from Attabotics for resale, as well as to distribute the licensed Software installed thereon, to Customers for their use within the Territory." (Ex. A §§ 1.1, 1.2.)

11.    Bastian's "Territory" is comprised of the United States, Canada, Mexico, Brazil, India, and other countries as agreed upon by the parties. (Ex. A Schedule A.)

12.    Attabotics agreed that it would, from time to time, submit to Bastian certain proposals, which Bastian could then submit to customers as a sale opportunity. (Ex. A ¶ 1.4.1.)

13.    In such Attabotics proposals, Attabotics would provide (a) technical documentation or data, (b) product specifications, (c) service or maintenance information, (d) pricing, (e) applicable licensing, warranty, and/or confidentiality terms applicable to the products, and one or more of the following: (f) clarifications of a technical or generally informative nature, (g) information responsive to the specific customer's requirement or request, or (h) other information. (Ex. A ¶ 1.4.1.)

14.    Attabotics would provide a proposal, which would set forth product installation and support services information. (Ex A ¶ 4.2.)

15.    In other words, whatever Bastian proposed to its customer came from Attabotics's own proposal.

**B.    Bastian Sells Attabotics Products to Accelerate360, LLC.**

16.    On December 18, 2020, Bastian entered into a System Agreement with third-party customer Accelerate 360, LLC ("A360"), wherein A360 purchased a warehouse system.

17.     Attabotics provided Bastian with a proposal, which Bastian mirrored in its contract with A360 (the "Attabotics Proposal").[2] Following the Attabotics Proposal, Attabotics entered into a Statement of Work with Bastian.[3]

18.     Pursuant to the Integrator Agreement and the Attabotics Proposal, Attabotics agreed to, *inter alia*, provide ongoing services and support to Bastian, to deliver products to Bastian or Bastian's customer(s), to perform installation and related support services, to make sales training available to Bastian at no cost to Bastian, and to assist Bastian in its marketing efforts to Bastian's customers. (Ex. A §§ 4.1, 4.2, 4.3, 4.4, 4.5.)

19.     A360 selected and agreed to purchase a system which utilized Attabotics's products and software.

20.     As required by the terms of the Integrator Agreement and Attabotics Proposal, Attabotics was heavily involved in the installation, set up, and testing of A360's system.

21.     Attabotics personnel were frequently on-site at A360's facilities in Olathe, Kansas, working with Bastian personnel to get the system working to specifications.

22.     Indeed, Attabotics personnel were so heavily involved, that Attabotics complained to A360 about Attabotics's staff being overworked.

23.     As required by the Integrator Agreement and Attabotics Proposal, since installation, Attabotics has performed numerous repairs on the system's hardware and software.

24.     As required by the Integrator Agreement and Attabotics Proposal, Attabotics also performed routine maintenance and software updates to the system.

---

[2] A true and accurate copy of the Attabotics Proposal is attached hereto as <u>Exhibit B.</u>
[3] A true and accurate copy of the Statement of Work is attached hereto as <u>Exhibit C.</u>

25.    Attabotics warranted its product's hardware and software for a period of twelve (12) months following the date that the end-user put the products into production with live orders. (Ex. A § 15.)

26.    On July 5, 2022, A360 sent Bastian a letter notifying Bastian that it considered Bastian to be in default of the System Agreement for failure to meet acceptance tests, failure to meet the approved project schedule, and for breach of representations.

27.    Over the month of July 2022, Bastian and A360 exchanged numerous communications about the system and their respective views on its performance.

28.    Finally, on July 29, 2022, A360 provided a Notice of Termination of the System Agreement, demanding a prompt refund of the amounts that A360 paid Bastian and removal of the system from the project site.

29.    On the same day, A360 filed a lawsuit against Bastian in Delaware Superior Court. *Accelerate360, LLC v. Bastian Solutions LLC*, N22C-07-203-EMD-CCLD (Del. Sup. Ct. July 29, 2022).[4]

30.    A360's Complaint and the allegations which purport to support its causes of action relate almost entirely, if not entirely, to alleged failures of Attabotics's hardware and software.

31.    Attabotics is mentioned fifty-one (51) times in A360's Complaint.

32.    A360 alleges that there were a host of "catastrophic" issues with the Attabotics Nest, Ants, and Software.

33.    A360 complained about Attabotics's services, averring *inter alia* that Attabotics was not forthcoming with what it was doing to the system, that Attabotics negligently updated the

---

[4] A true and accurate copy of the public version of the Complaint is attached hereto as <u>Exhibit D</u>. A360 filed the Complaint in this redacted form to protect trade secret and proprietary information.

software to a version which made the system unworkable, and that Attabotics staff failed to show up, failed to request needed updates, directed personnel to perform tasks incorrectly, and unilaterally shut down A360's operations.

34.    A360's allegations attribute numerous shutdowns and delays to Attabotics's acts and omissions.

35.    Throughout Bastian's agreement with A360 and throughout Attabotics's Proposal and Statement of Work, there were throughput and availability requirements, which A360 contends the system could not meet.

36.    Despite the allegations by A360 against Attabotics's hardware and software, Bastian maintains that it performed adequately under its contract with A360. However, to the extent Bastian is found not to have adequately performed, A360's allegations solely implicate Attabotics's responsibilities and representations.

**C.    Attabotics Has a Duty to Defend and Indemnify Against A360's Claims.**

37.    Bastian has notified Attabotics of A360's claims and has demanded a defense in accordance with the express terms of the Integrator Agreement.

38.    Bastian has additionally put Attabotics on notice that upon entry of a final award or settlement of the A360 litigation, Attabotics will be required to indemnify Bastian as set forth in the Integrator Agreement.

39.    Attabotics's obligations are clearly delineated in the Integrator Agreement, which states as follows:

> [E]ach party hereto (the "Indemnifying Party") **shall defend the other party . . . against any and all third-party suits, claims, actions or proceedings** ("Third-Party Claim["]), **and shall indemnify the indemnified Party against any costs, expenses, damages, awards interest, penalties, fines (including reasonable attorneys' fees, disbursements and expenses) finally awarded therein** to such third party by a court of competent jurisdiction or agreed to by the Indemnifying

6

Party in a monetary settlement of such Third-Party Claims, **and the costs of enforcing any right to indemnification under this Agreement for**: (a) **material breach or non-fulfillment of any representations, conditions, warranties or covenants** hereunder; (b) any **negligent or more culpable act or omission** of Indemnifying Party (including any recklessness or willful misconduct) **in connection with the performance of its obligations** under this Agreement; (c) **any** bodily injury, death of any Person or **damage to real or tangible personal property caused by the negligent acts or omissions** of Indemnifying Party **or** the Indemnifying Party's **negligence, intentional misconduct or defect in design or manufacture**; or (e) (sic) allegations that the Indemnifying Party breached its agreement with a third party as a result of or in connection with entering into, performing under or terminating this Agreement. In the event that any such Third-Party Claim is brought, the Indemnifying Party shall undertake and have sole control [over] the defense and any related settlement of such action.

(Ex. A § 11.2) (emphases added).

40.     To date, Attabotics has refused to defend and has denied its ultimate responsibility to indemnify Bastian against A360's claims.

41.     Bastian has been forced to defend A360's claims, despite Attabotics's express obligation to defend, and has suffered expense and irreparable harm as a result.

42.     While Attabotics owes Bastian a defense, because there would be a conflict of interest between Bastian and Attabotics, Bastian is entitled to retain its own counsel with Attabotics's reimbursement for prior costs and fees, and for costs and fees moving forward. *See Sitek v. Cerna Trucking, Inc.*, 2009 WL 624345, No. 3:06-cv-138 RM at *7 (N.D. Ind. Mar. 9, 2009) (resolving substantially similar facts in the same manner); *see also State Farm Mut. Auto. Ins. Co. v. Glasgow*, 478 N.E.2d 918, 923 (Ind. Ct. App. 1985) ("In such a situation the insurer should not defend, but, rather, as here, should reimburse the insured's personal counsel.") (quoting *Snodgrass v. Baize*, 405 N.E.2d 48, 51 (Ind. Ct. App. 1980)).

**D.     Attabotics's Had Numerous Failures Under the Integrator Agreement.**

43.     Attabotics has breached the Integrator Agreement by refusing to uphold its defense and indemnity obligations.

7

44. Bastian denies the allegations of A360 and maintains that it did not breach the agreement with A360, but nevertheless, to the extent A360 prevails in proving its allegations, then Attabotics has breached the Integrator Agreement for the reasons set forth in A360's complaints.

45. A360's purchase of a system which utilized Attabotics's hardware and software products triggered various of Attabotics's obligations under the Integrator Agreement and Attabotics Proposal. (Ex. A § 2.1) (approved orders "shall be governed by the terms of this [Integrator] Agreement . . . .")

46. The Integrator Agreement required Attabotics to support, assist, and fully cooperate with Bastian in a timely and responsive manner with A360's system. (Ex. A § 1.4.2.)

47. The Integrator Agreement required Attabotics to deliver products to A360. (Ex. A §§ 4.1.1 & 4.1.2.)

48. The Integrator Agreement required that if Attabotics's delivery or performance was to be delayed, Attabotics was to take the measures necessary, including the use of overtime or express freight, to meet the scheduled deliver date, without cost to Bastian. (Ex. A § 4.1.2.)

49. The Integrator Agreement required Attabotics to perform product installation and related support services at A360's facility, "[f]or each Product Installation." (Ex. A § 4.2.) This expressly included the following:

a. providing a supervisor at the Installation Site to oversee and direct the work associated with installing the product and making it operational;

b. providing necessary equipment, supplies, and personnel to construct and install the product; and

c. supplying documentation as reasonably required to support the product installation and operation; and removing equipment, surplus materials and debris

following installation. (Ex. A § 4.2.)

50.    The Integrator Agreement required Attabotics to update its software, and to make such updates available to both Bastian and A360. (Ex. A § 14.2.5.)

51.    The Attabotics Proposal required Attabotics to provide a system to the specifications stated therein.

52.    Attabotics issued a warranty for its product hardware, warranting that "[a]ll services provided by Attabotics will be performed in a good and workmanlike manner, based on commercially reasonable practices and standards." (Ex. A § 15.1.)

53.    Attabotics further warranted that, with respect to hardware, "Attabotics shall, for the benefit of [A360], repair or replace defective parts, including labor, and shall perform preventative maintenance at no cost to [Bastian] for a period of twelve (12) months following the date that the [A360] puts the Products into production with live orders." (Ex. A § 15.1.)

54.    With respect to software, Attabotics warranted that for the same twelve (12) month period, "all Software supplied pursuant to this [Integrator] Agreement shall substantially conform to Attabotics's written specifications. In the event that the Software does not so conform, Attabotics will provide Licensee programming services . . . to correct documented program errors . . . ." (Ex. A § 15.3.)

55.    Attabotics promised that it would "provide [A360] with 24/7/365 phone support during the warranty period." (Ex. A § 15.3.)

56.    Attabotics warranted "that the Products are in material compliance with all applicable laws in effect, at the time an order is accepted by Attabotics, in the Territory." (Ex. A § 15.15.2.)

57.    A360's allegations, if proven true, would mean that Attabotics did not support, assist, or fully cooperate with Bastian in a timely and responsive manner with regard to A360's system. (Ex. A § 1.4.2.)

58.    A360's allegations, if proven true, would mean that Attabotics did not timely deliver all products to A360 and did not take adequate measures necessary to meet the scheduled delivery date without cost to Bastian. (Ex. A §§ 4.1.1 & 4.1.2.)

59.    A360's allegations, if proven true, would mean that Attabotics performed product installation and related support services at A360's facility, "[f]or each product installation" in a materially defectively manner. (Ex. A § 4.2.)

60.    A360's allegations, if proven true, would mean that Attabotics failed to timely update its software, and/or negligently updated its software such as to cause even greater harm and/or to A360's system operations. (Ex. A § 14.2.5.)

61.    A360's allegations, if proven true, would mean that Attabotics failed to provide its services "in a good and workmanlike manner, based on commercially reasonable practices and standards." (Ex. A § 15.1.)

62.    A360's allegations, if proven true, would mean that Attabotics failed to "repair or replace defective parts, including labor," and failed to provide "preventative maintenance at no cost to [Bastian] for a period of twelve (12) months following the date that the [A360] puts the Products into production with live orders." (Ex. A § 15.1.)

63.    A360's allegations, if proven true, would mean that Attabotics failed to provide software which "substantially conform[ed] to Attabotics's written specifications," and failed to "correct documented program errors." (Ex. A § 15.3.)

64.     A360's allegations, if proven true, would mean that Attabotics failed to "provide [A360] with 24/7/365 phone support during the warranty period." (Ex. A § 15.3.)

### COUNT I - DECLARATORY JUDGMENT
### Indiana Code § 34-14-1-2 et al.

65.     Bastian incorporates the foregoing paragraphs as though fully set forth herein.

66.     Bastian and Attabotics's relationship is governed by the Integrator Agreement.

67.     The Integrator Agreement requires Attabotics to defend Bastian against "any and all third-party suits, claims, actions or proceedings," and to "indemnify [Bastian] against any costs, expenses, damages, awards, interest, penalties, fines (including reasonable attorneys' fees, disbursements and expenses) finally awarded therein to such third party." (Ex. A § 11.2.)

68.     A third party, A360, has sued Bastian, triggering Attabotics's duty to defend.

69.     A360's complaint is replete with allegations that point to Attabotics's material breach or non-fulfillment of representations, conditions, warranties or covenants of the Integrator Agreement and failures under the Attabotics Proposal. (Ex. A § 11.2.)

70.     A360's complaint is replete with allegations that point to Attabotics's negligent or more culpable acts or omissions in connection with the performance of its obligations under the Integrator Agreement and Attabotics Proposal. (Ex. A § 11.2.)

71.     A360's complaint is replete with allegations of damage to real or tangible personal property caused by Attabotics's negligent acts or omissions, and/or Attabotics's alleged negligence, misconduct, or defect in design or manufacture. (Ex. A § 11.2.)

72.     Bastian promptly notified Attabotics of A360's claims and demanded a defense. (Ex. A § 11.2.)

73.     Attabotics has refused to defend Bastian against A360's claims.

74. Bastian has further placed Attabotics on notice that upon entry of final judgment or of the settlement of the A360 claims, Attabotics will be responsible for indemnifying Bastian.

75. Attabotics refuses to acknowledge that it will have an indemnification obligation against A360's claims and has repudiated any such obligation.

76. Bastian requests that this Court declare the rights, status, and/or legal relations between Bastian and Attabotics, and specifically to declare that Attabotics has a present duty to defend Bastian against A360's claims, and that at such time as judgment is entered or settlement reached, Attabotics will have an obligation to indemnify Bastian for the award or settlement. *See* Ind. Code § 34-14-1-1.

77. Bastian is entitled to its costs and fees in enforcing its rights pursuant to both the Integrator Agreement (§ 11.2) and Indiana Code § 34-14-1-10. (Ex. A § 11.2) ("and the costs of enforcing any right to indemnification under this Agreement").

WHEREFORE Plaintiff Bastian Solutions, LLC respectfully requests that the Court enter an order declaring the following:

1) Attabotics, Inc. is required to defend Accelerate360, LLC's claims against Bastian Solutions, LLC;

2) Because there exists a conflict between Bastian Solutions, LLC and Attabotics, Inc., Bastian Solutions, LLC is entitled to proceed with its own counsel and Attabotics, Inc. must pay the costs and fees associated with the defense, including past costs and fees and those moving forward;

3) Attabotics, Inc. will be required to indemnify Bastian Solutions, LLC as to Accelerate360, LLC's claims at such time as a final award is entered or settlement is reached, if ever;

4) Attabotics, Inc. is required to pay Bastian Solutions, LLC its costs and fees expended in enforcing its right to defense and indemnification;

5) For specific performance; and

6) All other appropriate relief.

## COUNT II - BREACH OF CONTRACT

78.    Bastian incorporates the foregoing paragraphs as though fully set forth herein.

79.    Attabotics and Bastian entered into the Integrator Agreement, which is a valid and enforceable contract, and which expressly incorporates the Attabotics Proposal.

80.    A360's allegations, if proven true, would mean that Attabotics breached the Integrator Agreement by including but not limited to the following ways:

a. Failing to support, assist, or fully cooperate with Bastian;

b. Failing to timely deliver products and services;

c. Failing to perform product installation and related support services for each product installation and/or doing so in a materially defective manner;

d. Failing to timely update software;

e. Failing to perform its services in a good and workmanlike manner;

f. Failing to repair or replace defective parts, including labor, and/or doing so in a materially deficient manner;

g. Failing to provide preventative maintenance as required, and/or doing so in a materially deficient manner;

h. Failing to provide software which substantially comported with written specifications;

i. Failed to correct documented program errors;

j. Failing to provide 24/7/365 phone support during the warranty period; and

k. Failing to meet the specifications expressly set out in the Attabotics Proposal.

13

81. Attabotics also breached the Integrator Agreement by failing to defend Bastian upon notice and demand.

82. Attabotics also preemptively breached the Integrator Agreement when it repudiated its obligations to indemnify Bastian.

83. As the result of Attabotics's breach, Bastian has been harmed and has suffered damages in the amount to be determined at trial.

WHEREFORE Plaintiff Bastian Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Attabotics, Inc. on its Count II and for all other relief just and proper.

### COUNT III - BREACH OF EXPRESS WARRANTY

84. Bastian incorporates the foregoing paragraph as though fully set forth herein.

85. Attabotics issued express warranties with respect to the products Bastian purchased, which are identified in the Integrator Agreement Section 15.

86. Attabotics expressly warranted the hardware it sold to Bastian and installed at A360's facility for twelve months following A360's go-live date.

87. Attabotics expressly warranted the software it sold to Bastian and installed at A360's facilities for the twelve months following A360's go-live date.

88. A360's allegations, if proven true, would mean that Attabotics breached its express warranties in the ways described herein within the warranty period.

89. As a proximate cause of Attabotics's breach of its warranties, Bastian has suffered and continues to suffer harm and damages in the amount to be determined at trial.

14

WHEREFORE Plaintiff Bastian Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Attabotics, Inc. on its Count III and for all other relief just and proper.

Respectfully submitted,

*/s/ Joshua B. Fleming*
Joshua B. Fleming, 25954-29
Sarah T. Parks, 34798-53
Quarles & Brady LLP
135 N. Pennsylvania St., Suite 2400
Indianapolis, IN 46204
Josh.fleming@quarles.com
Sarah.parks@quarles.com


*Of Counsel*
Raymond Jamieson
Evan W. Thomsen
Quarles & Brady LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202-4428
Raymond.jamieson@quarles.com
Evan.thomsen@quarles.com

QB\76580250.8